WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Rose Hernandez,                    )
                                   )
                 Plaintiff,        )
                                   )
        v.                         )   CIV 03-2113 PCT VAM
                                   )
AutoZone, Inc., et al.,            )   O R D E R
                                   )
                 Defendants.       )
_____)

A.   BACKGROUND

Plaintiff filed her pro se complaint in state court on October 2, 2003.  (Doc. 1).  Defendant removed the case to federal court on October 29, 2003.  (Id.).  The parties consented to proceed before the Magistrate Judge.  (Docs. 6-8).  Defendants Dave Brown and Dave Janeway were dismissed.  (Doc. 18).  Defendant AutoZone filed a Motion for Summary Judgment.  (Docs. 30, 33, 36).  Plaintiff opposed the Motion for Summary Judgment.  (Docs. 38, 39).  The Motion for Summary Judgment was granted in part (Doc. 44) and the case proceeded to trial on two issues:

(1) whether plaintiff was constructively discharged under the Americans With Disabilities Act (ADA) based on a work-related injury and

(2) whether defendant denied plaintiff overtime based on her national origin (Hispanic) in violation of Title VII.  (Doc. 44 at p. 24).

1    The case was tried to the Court on October 25 and 26, 2005.

2    At the close of trial, the Court found for defendant on

3    plaintiff's Title VII claim.   The basis for the Court's ruling is

4    stated on the record.   The claim of constructive discharge under

5    the ADA was taken under advisement.   The Court now rules on the

6    remaining claim.

7        B.   LAW

8        To establish a prima facie case under the ADA, plaintiff must

9    show she is: (1) disabled; (2) qualified; and (3) suffered an

10   adverse employment action (in this case constructive discharge)

11   because of her disability.   Snead v. Metropolitan Property &

12   Casualty Ins. Co., 237 F.3d 1080, 1087 (9th Cir.), cert. denied,

13   534 U.S. 888 (2001); see also Sanders v. Arneson, 91 F.3d 1351,

14   1353 (9th Cir. 1996), cert. denied, 520 U.S. 1116 (1997).   The ADA

15   defines "disability" as:

16       (2) ... (A) a physical or mental impairment that
         substantially limits one or more of the major life
17       activities of such an individual;

18       (B) a record of such impairment; or

19       (C) being regarded as having such an impairment.

20   42 U.S.C. § 12102.

21       The U.S. Supreme Court has defined the term "substantially"

22   in "substantially limits" to mean "considerable" or "to a large

23   degree."   Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,

24   534 U.S. 184, 196 (2002).   The Court further stated that "[t]he

25   word 'substantial' thus clearly precludes impairments that

26   interfere in only a minor way with the performance of manual tasks

27   from qualifying as disabilities."

28                                    2

1  The Court defined the term "major" in relation to "major life
2  activities" to refer to:

3      those activities that are of central importance to daily
4      life.  In order for performing manual tasks to fit this
       category - a category that includes such basic abilities
       as walking, seeing, and hearing - the manual tasks in
5      question must be central to daily life.

6  Toyota, 534 U.S. at 197.

7      A "qualified person" is defined as one who "with or without
8  reasonable accommodation, can perform the essential functions of
9  the employment position that such individual holds or desires."
10  42 U.S.C. § 12111(8).  The ADA also requires covered entities "to
11  provide 'reasonable accommodations to the known physical or mental
12  limitations of an otherwise qualified individual with a disability
13  who is an applicant or employee, unless such covered entity can
14  demonstrate that the accommodation would impose an undue
15  hardship."  42 U.S.C. § 12112(b)(5)(A).

16      In a claim predicated on constructive discharge, as plaintiff
17  has alleged in this case, a plaintiff must show her employer made
18  "working conditions so intolerable that a reasonable person would
19  have felt compelled to resign."  Pennsylvania State Police v.
20  Suders, ___ U.S. ___, 124 S.Ct. 2342, 2354 (2004).  Once an
21  employee establishes a prima facie case of discrimination based on
22  disability, and the employer has produced evidence of a
23  legitimate, non-discriminatory reason for its actions, the
24  analysis developed in McDonnell Douglas for suits under Title VII
25  of the Civil Rights Act of 1964 applies.  Snead v. Metropolitan
26  Property & Casualty Ins. Co., 237 F.3d 1080, 1093 (9th Cir. 2001).
27  In short, once plaintiff has established a prima facie case of

28                                3

discrimination and defendant has come forward with a legitimate, non-discriminatory reason for its actions, then the burden shifts back to plaintiff to establish that defendant's proffered reason is merely a pretext for a discriminatory motive.   McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); see also Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).   The ultimate burden of persuasion remains with the plaintiff.   Burdine, 450 U.S. at 253.

C.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.   Rose Hernandez was hired by the Flagstaff AutoZone store on July 11, 2001.   She started as a cashier and in May, 2002 she asked for a transfer and was reassigned to the "commercial" area as a driver.

2.   On October 1, 2002, plaintiff suffered an injury to her back and shoulder while working in the store.   She went to the doctor and was released to return to work on that day with restrictions.   Plaintiff's initial restrictions were no repetitive lifting over two pounds, no pushing and/or pulling over five pounds of force, no reaching above shoulders and unable to drive company vehicle.   (Def. Ex. 11).   Plaintiff continued to see her physician for this injury on October 16, 2002, February 3, 2003, March 4, 2003 and March 26, 2003.   (Def. Ex. 11).   Gradually plaintiff's lifting restrictions were lessened and by her last visit of record (March 26, 2003) she was restricted to no repetitive lifting over twenty pounds, no reaching above shoulders and limited use of left arm.   (Def. Ex. 11).   Plaintiff was never released by her doctor but eventually discontinued visiting the

4

doctor.

3.   Plaintiff resigned her job with AutoZone by letter dated June 11, 2003 indicating, in part:

> This action is due to the constant harassment and mental abuse I have endured for the past year and a half from some management personnel and management's decision to ignore my request for assistance.  I am accepting the advice of my doctors for health reasons and this is to be effective June 13, 2003.

4.   Dave Brown harassed plaintiff on the job on a regular basis.  He also harassed his other co-workers, including his supervisor, to the point where his supervisor stepped down as the store manager to avoid having to supervise Dave Brown.  Dave Brown criticized plaintiff in front of customers, pulled her off assignments her supervisor gave her which prevented her from completing these tasks.  Plaintiff would become so upset she would cry.  Dave Brown harassed all employees but picked on plaintiff more than others.

5.   After complaining to her supervisors and corporate management regarding her problems with Dave Brown and receiving no assistance, she felt forced to resign.

6.   Plaintiff filed an EEOC complaint on June 18, 2003 (one week after her resignation letter) indicating, among other things:

> . . .I have been disciplined for refusing to violate medical restrictions placed on me.  I know of younger, non-disabled, non-Hispanic employees who have been promoted, received raises and have been allowed to work overtime.  Finally, I am constantly criticized by store manager Dave Janeway and assistant store manager Dave Brown.  The harassment became so unbearable that I was forced to take a medical leave of absence.  I believe the harassment and the foregoing adverse actions have been taken against me for the reasons listed below.

> I believe I have been discriminated against because of

5

1  my national origin, age, and disability. . .

2  (Pl. Ex. 2).

3  In order to establish a prima facie case under the ADA,

4  plaintiff must show that she is disabled.  A showing of disability

5  requires plaintiff to prove a physical or mental impairment that

6  substantially limits one or more major life activities.  42 U.S.C.

7  § 12102.  Lifting restrictions, even if permanent, do not qualify

8  as a disability unless the plaintiff demonstrates that she is

9  "significantly restricted in the ability to perform either a class

10  of jobs or a broad range of jobs in various classes as compared to

11  the average person having comparable training, skills and

12  abilities."  Thompson v. Holy Family Hospital, 121 F.3d 537, 540

13  (9th Cir. 1997).  Plaintiff made no showing that she is

14  substantially limited in a major life activity of lifting or work.

15  Plaintiff did not even allege that she was significantly

16  restricted in her ability to perform a class of jobs or broad

17  range of jobs.  As a result, plaintiff has not demonstrated a

18  disability within the meaning of the ADA.  Thompson v. Holy Family

19  Hospital, 121 F.3d at 540.

20  **IT IS THEREFORE ORDERED** that the Clerk shall enter judgment

21  for defendant.

22  DATED this 6th day of December, 2005.

23

24

25  _Virginia A. Mathis_
Virginia A. Mathis
United States Magistrate Judge

26

27

28  6